IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| THE OHIO CASUALTY INSURANCE COMPANY and WEST AMERICAN INSURANCE COMPANY,<br><br>Plaintiffs and Cross-Defendants,<br><br>vs.<br><br>CLOUD NINE, LLC, et al.,<br><br>Defendants.<br><br><br>UNIGARD INSURANCE COMPANY,<br><br>Plaintiff/Intervenor and Cross-Claimant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 1:05-CV-88 TC |

The parties seek a ruling regarding the scope of two insurance companies' duty to defend the Cloud Nine Defendants in the separate case of <u>Edizone LC v. Cloud Nine LLC</u>, Case No. 1:04-CV-117-TS (D. Utah). One of the insurance companies, Unigard Insurance Company, agreed to defend the Cloud Nine Defendants in <u>Edizone</u>, whereas the other insurance company, The Ohio Casualty Insurance Company, rejected the Cloud Nine Defendants' initial tender of defense. Unigard, in its Motion for Partial Summary Judgment, contends that Ohio Casualty,

like Unigard, has a duty to defend.[1]  Unigard further contends that Ohio Casualty should share equally in paying the costs that Unigard has incurred (or will incur) defending the <u>Edizone</u> case.

The court finds that the allegations in Edizone's Complaint allege an advertising injury triggering a duty to defend on the part of Ohio Casualty and Unigard.  Also, based on the language of the Ohio Casualty and Unigard policies, the court finds that Ohio Casualty must pay fifty percent of the Cloud Nine Defendants' defense costs in <u>Edizone</u>, with Unigard paying the remaining fifty percent.  Accordingly, Unigard's Motion for Partial Summary Judgment is GRANTED.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[2]

Unigard insured the Cloud Nine Defendants for a portion of the period at issue in the <u>Edizone</u> case, and it accepted the Cloud Nine Defendants' tender of defense under a reservation of rights when <u>Edizone</u> was filed in August 2004.  Ohio Casualty also insured the Cloud Nine Defendants for a portion of the relevant period, but it rejected their initial tender of defense.  Ohio Casualty then filed this declaratory judgment action seeking a ruling that it has neither a duty to defend nor a duty to indemnify the Cloud Nine Defendants.  Unigard intervened as a plaintiff, contending that it also does not have a duty to defend or indemnify, but if it does, then

---

[1] West American Insurance Company is also a plaintiff in this declaratory judgment action.  But because no one claims that West American has a duty to defend, it is not part of the motion before the court.  (See Unigard's Mem. Supp. Mot. Partial Summ. J. at p. 20 n.3 ("Unigard finds that the *Edizone* Suit does not allege a covered advertising injury against the Cloud Nine Defendants which occurred during the effective periods of the insurance policies issued by West American (June 1998 through June 2001), and therefore does not claim that West American has a duty to defend the Cloud Nine Defendants.").)

[2] No disputed facts exist (indeed, the analysis is based on allegations in Edizone's Complaint and the policy language).  The court will discuss the facts throughout the Order as necessary to provide context and analyze the legal issues.

so does Ohio Casualty because the policies are essentially identical.[3]  Additionally, Unigard seeks a finding that if both insurers have a duty to defend, Ohio Casualty must share equally in paying defense costs (incurred and to be incurred).

It is important to note that after Unigard filed its Motion for Partial Summary Judgment, Ohio Casualty agreed to defend the Cloud Nine Defendants under a reservation of rights, based on what it believes are materially new allegations in the Second Amended Complaint filed in Edizone.  Because Ohio Casualty has since acknowledged a duty to defend from the date of Edizone's Second Amended Complaint (filed in January 2006), the duty-to-defend issue raised by Unigard's Motion is narrowed to whether Ohio Casualty owed a duty to defend before the Second Amended Complaint was filed.

### A.    The Insurance Policy

Ohio Casualty issued a Commercial General Liability Policy to Cloud Nine, LLC, and Easy Seat, LLC, for the period of June 10, 2001, to June 10, 2002.  (Ohio Casualty Policy No. BKO (02) 52 34 34 82, attached as Ex. A to Decl. of Rebecca Hill.)  The Policy provided coverage for "Personal and Advertising Injury Liability" (Coverage B), as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and **advertising injury**" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .

(Id. at p. 5 of CGL Coverage Form (emphasis added).)  According to the Policy, "personal and

---

[3]Unigard's Motion addresses only the duty to defend, not the duty to indemnify.  Both Unigard and Ohio Casualty contend that no duty to indemnify exists under their respective policies.  But that is an issue for another day.

advertising injury" is an "injury . . . arising out of one or more of the following offenses: . . . [t]he **use of another's advertising idea in your 'advertisement'** . . . ." (Id. at p. 13 (emphasis added).) "Advertisement" is defined as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." (Id. at p. 11.)

The Policy also contains certain exclusions. In particular, the insurance policy does not apply to "personal or advertising injury" that was "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertisement injury'" or that arose "out of oral or written publication of materials, if done by or at the direction of the insured with knowledge of its falsity." (Id. at p. 5 (emphasis added).)[4]

### B. Edizone's Complaint

The genesis of the Edizone suit is the alleged breach of a License Agreement allowing the Cloud Nine Defendants to manufacture, use and sell patented elastomer gel technology and product known as "Gelastic," "GellyComb," and "Intelli-Gel" (another name for "GellyComb"). In its initial complaint,[5] Edizone asserts causes of action for (1) patent infringement; (2) breach

---

[4] Coverage B of the Unigard Policy provides liability insurance coverage for personal and advertising injury. The insuring provision of Coverage B of the Unigard Policy is identical to insuring provision of Coverage B of the Ohio Casualty Policy. (See Unigard Policy CGL Coverage Form at p. 6, attached as Ex. B to Declaration of Rebecca L. Hill.) The definition of "Personal and Advertising Injury" contained in the Unigard Policy is also identical to the Ohio Casualty Policy. (See id. at p. 17.) And the definition of "advertisement" and policy exclusions in both policies are the same in all relevant aspects. (See id. at pp. 6-7, 14.) Accordingly, the court's ruling on the duty to defend extends to Unigard as well.

[5] As noted above, only the allegations of Edizone's original Complaint (or First Amended Complaint, which adds defendants but does not change the allegations (see Ex. F attached to Hill

4

of contract; (3) constructive fraud; (4) fraudulent non-disclosure; (5) federal law trademark infringement; (6) common law trade name infringement or common law unfair competition; (7) deceptive trade practices under the Utah Truth in Advertising Act; (8) misrepresentation and false designation of origin under the federal trademark act; and (9) conspiracy.  (See Edizone Complaint, attached as Ex. E to Hill Decl.)

According to Unigard, Edizone's Complaint triggers a duty to defend under the "advertising injury" portion of the Policy because it alleges that the Cloud Nine Defendants used Edizone's "advertising ideas" (the trade names GellyComb, Gelastic, and Intelli-Gel) in their advertisement, all to Edizone's detriment.  Unigard focuses on Edizone's Sixth, Seventh, and Eighth causes of action to argue that Edizone's allegations trigger Ohio Casualty's duty to defend under the Policy's Coverage B for "personal and advertising injury" liability.

In its Complaint, Edizone describes its Sixth Cause of Action as "Common Law Trade Name Infringement [and] Common Law Unfair Competition."  It alleges that the Cloud Nine Defendants "have adopted and taken for themselves the use of Edizone's valuable trade names [GellyComb, Gelastic, and/or Intelli-Gel] by using said names in their businesses, on their websites, and in conjunction with their goods. . . ."  (Edizone Compl. ¶ 103, attached as Ex. E to Declaration of Rebecca L. Hill.)  Edizone further alleges that the Cloud Nine Defendants' use of those trade names constitutes "common law trade name infringement and unfair competition and is designed to cause confusion and mistake and to deceive purchasers into believing that Defendants' products are somehow sponsored by, made by, or associated with Edizone."  (Id.)

---

Decl.)) are relevant.  The court does not consider the allegations of Edizone's Second Amended Complaint, because Ohio Casualty has agreed to defend the Cloud Nine Defendants from the date the Second Amended Complaint was filed.

Edizone contends that, "[a]s a direct and proximate result of Defendants' actions, Edizone will suffer, and has suffered, injury to its trade names and its established good will in the market. Defendants' acts, misconduct, and misappropriation of Edizone's trade names are also likely to cause confusion, mistake, and deceive the public, and have already caused actual confusion. Such injuries are irreparable injuries for which there is no adequate remedy at law." (Id. ¶ 105.)

Under Edizone's Seventh Cause of Action, the Cloud Nine Defendants are accused of violating the Utah Truth in Advertising Act, Utah Code Ann. § 13-11a-3, which "prohibits persons and companies from engaging in deceptive trade practices." (Id. ¶ 108.) Edizone alleges that the Cloud Nine Defendants "engaged in many of the deceptive trade practices enumerated in [§ 13-11a-3], including . . . the causing of confusion or misunderstanding as to the source, sponsorship, approval, or certification of their goods or services; or . . . the causing of confusion or misunderstanding as to their affiliation, connection, association with, or certification by Edizone." (Id.)

And, finally, Edizone's Eighth Cause of Action alleges "Misrepresentation and False Designation of Origin" under 15 U.S.C. § 1125(a). According to Edizone, the Cloud Nine Defendants "appropriated the names GellyComb, Gelastic and/or Intelli-Gel and are using [the names] in their own businesses . . . in a prominent fashion." (Id. ¶ 110.) In particular, Edizone alleges that the Cloud Nine Defendants "use the above trade names to get people to their businesses, where competing products are advertised and sold using said trade name."[6] (Id. ¶ 113.)

---

[6]The full set of allegations may be found in Edizone's Complaint (in particular, paragraphs 101-114), which is attached as Exhibit E to the Declaration of Rebecca L. Hill.

### C.     Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56 permits the entry of summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c);  see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).

Unigard's Motion involves the interpretation of two insurance contracts and a determination of the insurers' rights and obligations under those contracts.  Utah law (which applies in this diversity action) provides that insurance contracts "are interpreted under general contract principles" and that interpretation of such contracts is a question of law to be determined by the courts.  Allstate Ins. Co. v. Worthington, 46 F.3d 1005, 1008 (10th Cir. 1995); see also Morris v. Mountain Tel. & Tel., 658 P.2d 1199, 1201 (Utah 1983) ("When the existence of a contract and the identity of the parties are not in issue and when the contract provisions are clear and complete, the meaning of the contract can appropriately be resolved by the court on summary judgment.").  Moreover, in Utah, as a general rule, "an insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations of the complaint."  Fire Ins. Exch. v. Estate of Therkelsen, 27 P.3d 555 (Utah 2001).  Accordingly, the question of whether the insurers have a duty to defend the Cloud Nine Defendants and the question of how defense costs should be allocated are questions of law.  Partial summary judgment on the issues presented by Unigard's Motion is appropriate at this time.[7]

---

[7]Ohio Casualty filed a Rule 56(f) motion seeking a continuance until certain discovery could be conducted.  The court denied that motion from the bench during the hearing.

**II.     DUTY TO DEFEND**

A duty to defend arises "when the insurer ascertains facts giving rise to potential liability under the insurance policy." Sharon Steel Corp. v. Aetna Cas. & Sur., 931 P.2d 127, 133 (Utah 1997). When the allegations, if proven, show "there is no potential liability [under the policy], then there is no duty to defend." Deseret Fed. Sav. v. U.S. Fid. & Guar., 714 P.2d 1143, 1147 (Utah 1986). Under Utah law, the court must interpret the insurance policy as it would any written contract, under general contract interpretation principles. Benjamin v. Amica Mut. Ins. Co., 140 P.3d 1210, 1213 (Utah 2006). If one claim or allegation triggers the duty to defend, the insurer must defend all claims (that is, covered and non-covered claims), at least until the suit is limited to the non-covered claims. Id. at 1216. Finally, and perhaps most important: "'When in doubt, defend.'" Id. at 1215 (quoting Appleman on Ins. Law & Practice § 136.2[C] (2d ed. 2006)).

   **A.     The *Novell* Two-Part Test**

Utah state court decisions have not construed "advertising injury" language in insurance policies. But the Tenth Circuit Court of Appeals has established a two-part test to determine whether an advertising injury is alleged, and, consequently, a duty to defend is triggered. See Novell, Inc. v. Fed. Ins. Co., 141 F.3d 983 (10th Cir. 1998). Under that test, the court must first determine whether the complaint alleges a "predicate offense," that is, "one of the offenses specifically listed in the [Policy's] definition of 'advertising injury.'" Id. at 986. If the first part of the test is satisfied, then the court must examine whether there is a causal connection between the alleged injuries and the advertising activities. Id.

Applying the Novell two-part test for establishing an "advertising injury" to the Edizone

8

case, the court finds that the allegations set forth in Edizone's Complaint satisfy the two-part test and trigger a duty to defend under the policies issued by Ohio Casualty and Unigard.

### 1.     Part One of the Novell Test

First, Edizone's Complaint alleges that the Cloud Nine Defendants committed the predicate offense of "use of another's [Edizone's] advertising idea in your [Cloud Nine's] 'advertisement.'" (See Policy at p.3.)  Neither the Policy nor Novell define "advertising idea." But courts from other jurisdictions have done so.  An "advertising idea" is an "idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage."  Atlantic Mut. Ins. Co. v. Badger Med. Supply Co., 528 N.W.2d 486, 490 (Wis. Ct. App. 1995) (applying ordinary meaning to term "advertising idea"); see also Walk v. Hartford Cas. Ins. Co., 852 A.2d 98, 109 (Md. Ct. App. 2004) (suggesting that advertising ideas are "discrete images or text in an advertisement"); Transportation Ins. Co. v. Freedom Elec., Inc., 264 F. Supp. 2d 1214, 1218 (N.D. Ga. 2003) (an advertising idea is "'any idea or concept related to the promotion of a product to the public'") (quoting Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179, 1188 (11th Cir. 2002)).  The discrete trade names of GellyComb, Gelastic, and Intelli-Gel expressly describe and promote the gel-like and elastic qualities of the material, calling the public's attention to the desirable qualities of Edizone's products.  Those trade names are "advertising ideas" as that phrase is understood by the average, reasonable purchaser of insurance.  See Draughton v. CUNA Mut. Ins. Soc'y, 771 P.2d 1105, 1108 (Utah Ct. App. 1989) (when interpreting insurance contract, court should construe policy as it "would be understood by the average, reasonable purchaser of insurance"); Utah Power & Light Co. v. Federal Ins. Co., 983 F.2d 1549, 1559 (10th Cir. 1993) (applying Utah law and

citing Draughton for same proposition).

Courts also find that where there is no exclusion specific to trademark (as is the case in Ohio Casualty's Policy), the phrase "advertising idea" is a broad enough term to include and provide coverage for trademark infringement. See, e.g., State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Amer., 343 F.3d 249, 256-57 (4th Cir. 2003) (noting that "vast majority" of courts conclude that trademark infringement falls within advertising injury coverage for misappropriation of advertising ideas or style of doing business); CAT Internet Servs., Inc. v. Providence Wash. Ins. Co., 333 F.3d 138, 142 (3d Cir. 2003) (use of trademarks in connection with marketing and sales for the purpose of gaining customers constitutes misappropriation of advertising idea); Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 749 (3d Cir. 1999) ("A trademark can be seen as an 'advertising idea': It is a way of marking goods so that they will be identified with a particular source. . . . [A]llegations of trademark infringement arguably allege misappropriation of an advertising idea."); Central Mut. Ins. Co. v. StunFence, Inc., 292 F. Supp. 2d 1072, 1079 (N.D. Ill. 2003) (finding duty to defend against trademark infringement claim under policy language covering liability for "use of another's advertising idea"). See also Novell, 141 F.3d at 985 ("'Ambiguities in an insurance contract are construed against the insurer.'") (interpreting Utah law) (citation omitted).

Certainly Edizone has alleged "use" of those advertising ideas in the Cloud Nine Defendants' advertisements.[8] For example, Edizone alleges that the Cloud Nine Defendants used

---

[8]To the extent that cases cited by Ohio Casualty hold that "misappropriation of an advertising idea" does not encompass trademark infringement claims, the court finds those cases distinguishable because the Policy here contains the common term "use," which is broader than "misappropriation." See also Central Mut. Ins. Co. v. StunFence, Inc., 292 F. Supp. 2d 1072, 1079 (N.D. Ill. 2003) (distinguishing decisions limiting "misappropriation of advertising idea" to

Edizone's trade names "in their businesses, on their websites," they "compete directly with Edizone in the same markets" and such conduct "is designed to cause confusion and mistake and to deceive purchasers into believing that Defendants' products are somehow sponsored by, made by, or associated with Edizone." (Edizone Compl. at ¶ 103.)  A business's website, except for the web pages concerning the business's contact information and history, is generally an advertisement for the business's goods, services or products.  And certainly a website would fall within the Policy's definition of "advertisement":  "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." (Policy at p. 11.)  Also, Edizone alleges under its claim for Misrepresentation and False Origin that the Cloud Nine Defendants used the trade names Intelli-Gel, GellyComb, and Gelastic "to get people to their businesses, where competing products are advertised and sold using" those trade names.  (Edizone Compl. ¶ 22.)  In claiming that the Cloud Nine Defendants unlawfully used Edizone's trade names on their websites, Edizone is claiming use of Edizone's advertising ideas in Cloud Nine's advertisements.

Moreover, Edizone alleges a claim under the Utah Truth in Advertising Act, which specifically requires allegations of deceptive trade practices occurring in advertising.  "The purpose of [the Utah Truth in Advertising Act] is to prevent deceptive, misleading, and false advertising practices and forms in Utah." Utah Code Ann. § 13-11a-1.  Clearly, the crux of a cause of action for violation of the Utah Truth in Advertising Act is advertising.

In short, the Edizone allegations fall within the definition of advertising injury as the

---

common law tort of misappropriation in part because the policy at issue in StunFence employed the word "use," not "misappropriation").

11

offense of "use of another's advertising idea in your 'advertisement,'" and the first part of the Novell test is satisfied.

### 2. Part Two of the Novell Test

The second part of the Novell test is also met because Edizone's Complaint alleges a causal connection between Edizone's injuries and the Cloud Nine Defendants' advertising activities. Edizone alleges that it has suffered injury to its trade names as a result of the Cloud Nine Defendants' misconduct and it expressly seeks relief prohibiting the Cloud Nine Defendants from using the trade names and trademarks on their websites, in advertising or in any other way. Those claims show the causal connection between Edizone's alleged injury from the Cloud Nine Defendants' use of Edizone's advertising ideas in its advertisements. Cloud Nine's advertising activities "caused [Edizone's] injury – not merely exposed it." See Novell, 141 F.3d at 989.

### 3. "When in doubt, defend."

Even if the court were to find that Edizone's Complaint presents factual questions or an uncertainty regarding whether an advertising injury is alleged, the insurers still have a duty to defend until those uncertainties are resolved. "Where factual questions render coverage uncertain, . . . the insurer must defend until those uncertainties can be resolved against coverage. 'When in doubt, defend.'" Benjamin, 140 P.3d at 1215 (quoting Appleman on Ins. Law & Practice § 136.2[C] (2d ed. 2006)).

### B. Policy Exclusions

Ohio Casualty argues that it owes no duty to defend the Cloud Nine Defendants because the allegations in Edizone's Complaint fall within two different intentional act exclusions in the

Ohio Casualty Policy.  According to those exclusions, the Policy does not apply to personal and advertising injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" or "arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity . . . ."  (Policy at p. 5.)  Ohio Casualty contends that these intentional act exclusions apply because Edizone alleges, or at least its allegations suggest, that the Cloud Nine Defendants knew of their violation of Edizone's rights and knew the illegality of their conduct.

But the causes of action asserted against the Cloud Nine Defendants do not necessarily require that, in order to find liability, the defendant have knowledge of falsity or knowledge that its conduct would cause advertising injury.  See 15 U.S.C. § 1114(1) (setting forth elements of trademark infringement); 15 U.S.C. § 1125(a) (setting forth elements of false designation of origin); Utah Code Ann. § 13-11a-3 (defining deceptive trade practices); George v. H.S. Peterson, 671 P.2d 208 (Utah 1983) (discussing the elements of common law trade name infringement).

Courts have found that intentional act exclusions do not negate the duty to defend unless there is no potential for liability under the allegations.  See, e.g., Central Mut. Ins. Co. v. StunFence, Inc., 292 F. Supp. 2d 1072, 1081-82 (N.D. Ill. 2003) (in trademark action, "insurer may refuse to defend only if it is clear from the face of the pleading that *all* of the allegations in the Underlying Action fall outside of the policy's actual or potential coverage") (emphasis in original); Elcom Tech., Inc. v. Hartford Ins. Co. of the Midwest, 991 F. Supp. 1294, 1298 (D. Utah 1997) (holding that "knowledge of falsity" exclusion did not negate duty to defend because

13

false advertising claim could be proved by establishing reckless indifference); Union Ins. Co. v. Knife Co., Inc., 897 F. Supp. 1213, 1217 (W.D. Ark. 1995) (holding that intentional act exclusion did not negate duty to defend: "Since intent is not a required element of trademark infringement, there could be a finding of liability . . . even if the infringement were innocent."); Citizens Ins. Co. v. Pro-Seal Serv. Group, Inc., 710 N.W.2d 547, 555 (Mich. Ct. App. 2005) (holding that intentional act exclusion did not negate duty to defend trademark suit because there was potential for liability even if infringement were negligent, reckless, or innocent).

Given the potential for liability in Edizone's allegations, the exclusions in the Policy do not free Ohio Casualty from its duty to defend. This conclusion is consistent with the Utah Supreme Court's declaration in Benjamin regarding the duty to defend alternative theories of intentional and unintentional liability.

> Where an insurance policy obligates an insurer to defend claims of unintentional injury, the insurer is obligated to do so until those claims are either dismissed or otherwise resolved in a manner inconsistent with coverage. Even where the complaint details egregious, intentional conduct, an expected injury exclusion like the one found in the Homeowners Policy does not relieve an insurer of its duty to defend claims of unintentional injury. Inferences and assumptions about an insured's intent to injure are improper and inconsistent both with the well-accepted practice of alternative pleading and with our oft-repeated instruction that "insurance policies should be construed liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purposes of the insurance."

Benjamin, 140 P.3d at 1215-16 (quoting United States Fid. & Guar. Co. v. Sandt, 854 P.2d 519, 521 (Utah 1993)).

For all the foregoing reasons, the court holds that both Unigard and Ohio Casualty have a duty to defend the Cloud Nine Defendants in the underlying action of Edizone LC v. Cloud Nine LLC, Case No. 1:04-CV-117-TS (D. Utah).

## III.     ALLOCATION OF DEFENSE COSTS

Now that the court has determined that both Unigard and Ohio Casualty have a duty to defend against all of Edizone's claims, the next question concerns how they should share the defense costs.  According to the Utah Supreme Court, "when apportioning defense costs among insurers, courts 'apply equitable principles . . . <u>unless express policy language decrees the method of apportionment</u>.'" <u>Sharon Steel Corp. v. Aetna Cas. & Sur. Co.</u>, 931 P.2d 127, 140 (Utah 1997) (emphasis added).

In this case, the Unigard and Ohio Casualty policies have identical provisions for Other Insurance and Method of Sharing, which provide, in relevant part:

> **Other Insurance**
>
> If other valid and collectible insurance is available to the insured <u>for a loss we cover</u> under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> > a.     **Primary Insurance**
> >
> > This insurance is primary except when b. below applies.  <u>If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in c. below.</u>
> >
> > . . . .
> >
> > c.     **Method of Sharing**
> >
> > If all of the other insurance permits contribution <u>by equal shares</u>, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
> >
> > If any other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the

      total applicable limits of insurance of all insurers.

(Ohio Casualty Policy CGL Form at p. 10 (emphasis added);  Unigard Policies CGL Form at p. 13, attached as Ex. B to Hill Decl.)   Unigard contends that the "Method of Sharing" provision contained in both policies plainly provides for allocation of equal shares, and because there are two insurers, the court should find as a matter of law that an equal split of defense costs is the appropriate allocation.

  Ohio Casualty contends that the Other Insurance provisions quoted above do not apply because the policies are successive, not concurrent.  Further, Ohio Casualty advocates the <u>Sharon Steel</u> equitable apportionment of costs based on "time on the risk" rather than an equal share approach between the insurers.  According to Ohio Casualty, it owes 3/45ths in defense costs based on a ratio of months on the risk.  The court disagrees.

  Ohio Casualty argues that the method of sharing set forth in the insurance policies' Other Insurance provisions only applies to the circumstance in which there are two concurrent primary policies, which have overlapping insurance policy periods.  Such a limited application is not supported by the specific language of the provisions.  Nothing in the provisions' language restricts their application to the circumstance of overlapping and/or concurrent insurance.  The introductory paragraph describes the other insurance simply as insurance which is available to the insured for "a loss we cover."  The term "loss" is a very broad term, and such "loss" can be caused by multiple "offenses" under Coverage B which can span successive policy periods.  Had the insurers meant to limit the application of the Other Insurance provision to concurrent instances only, they could have drafted the language differently.  As the policies stand now, there is no limiting language.

Also, Ohio Casualty's suggested allocation method—which includes allocating a six-month period of time to the Cloud Nine Defendants (for a period of time during which they were unable to find and obtain insurance)—essentially advocates the position that an insurer has a duty to defend only those claims covered by its insurance policy. That proposition is directly contrary to Utah case law, which requires an insurer to defend covered and non-covered claims in the same lawsuit until the insurer can limit the suit to claims outside the policy. See, e.g., Benjamin v. Amica Mut. Ins. Co., 140 P.3d 1210, 1216 (Utah 2006) ("'[I]f an insurer has a duty to defend one count of a complaint, it must defend them all.'") (quoting Mt. Airy Ins. Co. v. Greenbaum, 127 F.3d 15, 19 (1st Cir. 1997)).

Based on the plain language of the insurance policies and Utah law regarding the scope of an insurer's duty to defend, the court holds that the defense costs in the Edizone case (incurred and to be incurred) are to be shared by Ohio Casualty and Unigard on an equal basis.

**ORDER**

For the foregoing reasons, Unigard Insurance Company's Motion for Partial Summary Judgment Regarding Insurers' Defense Obligations is GRANTED.

DATED this 14th day of November, 2006.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge